Frank S. McCullough, J.
This is an application by the State Commission for Human Rights brought pursuant to subdivision 4 of section 297 of the Executive Law, for an order enjoining the respondents from selling, renting, leasing or otherwise disposing of an apartment located at 34 Theodore Fremd Avenue, Rye, New York, to anyone other than one Awilda Britto, a complainant in a proceeding pending before the State Commission.
The petition alleges that the respondents refused to rent the subject apartment to the said complainant because of her race and color.
The petition contains the conclnsory allegation that unless the respondents are stayed as prayed for in the petition, the commission will be prevented from issuing an effective final determination with respect to the alleged discriminatory practice and that the intent of the New York law will be frustrated and substantial and irreparable injury will result to the petitioner and to the complainant in the proceeding before the State Commission for Human Rights. There has been no proof adduced as to the alleged irreparable injury, other than the conclnsory statements contained in the petition. The court notes that while the statutes provide for injunctive relief in cases of alleged discrimination, there is no provision for payment of compensation to the property owner by the State or the complainant in the event the charges are not sustained, except for a reference to the remedies prescribed in CPLR 2512;
It cannot be disputed that the purpose of the statute is a laudable and needed one for the prevention of discrimination in housing accommodations. While it is true that it is difficult, if not impossible, to legislate morals and tolerance, this act *673 furnishes a needed arm of enforcement. In order to prevent injustice, however, it is an act that must be judicially enforced and applied.
With that in mind the Legislature enacted article 12-D of the General Municipal Law which provided by section 239-o: “ § 239-0. Creation, appointment and terms. The governing board of any county, city, village or town may by resolution create a commission on human rights. The governing board shall determine the number of members of such commission, the terms of the members, the manner of appointment of the members, the selection of a chairman and the compensation, if any, to be paid to them. In selecting the membership of the commission, the governing board shall take into consideration the various religious, racial, nationality and political groups in the community. The establishment of such a commission at one level of local government shall not preclude establishment of such a commission at other levels of local government.”
In accordance with that section the City of Eye established such a commission and included within its membership a Presbyterian minister, a Methodist minister, a Catholic priest, an Episcopal minister, a member of the Jewish faith, a member of the NAACP, a member of the Council on Human Eights, a former commander of the American Legion, a member of the School Board and other distinguished citizens.
The statute provides in part that the general duties of the commission are as follows:
“ § 239-q. General duties. It shall be the duty of the commission:
“ (a) To foster mutual respect and understanding among all racial, religious and nationality groups in the community.
“(b) To make such studies in any field of human relationship in the community as in the judgment of the commission will aid in effectuating its general purposes.
“(c) To inquire into incidents of tension and conflict among or between various racial, religious and nationality groups, and to take such action as may be designed to alleviate such tensions and conflict.
“(d) To conduct and recommend such educational programs as, in the judgment of the commission, will increase goodwill among inhabitants of the community and open new opportunities into all phases of community life for all inhabitants.”
Unfortunately in the present proceeding, that commission appears to have been by-passed by the complainant, the respondent and the State Commission for Human Eights. It was so *674 stated in open court by a member of the Eye commission. It is, of course, not a requirement to the bringing of this proceeding that the local Commission for Human Eights be consulted. It may well be that further legislation should be enacted to give the local authority additional powers, but that is a matter of legislative action, not judicial determination.
It appears from the oral argument on this application that at the preliminary hearing before the State Commission for Human Eights, there was read into the record a proposed conciliation agreement prepared prior to the hearing, evidently on the assumption that there had been a violation of law, which the respondents allege indicated a predetermined finding. Thereafter the hearing commissioner, Euperto Euiz, held that probable cause existed to credit the allegations of the complaint. Subsequently thereto, this application was brought on by order to show cause before this court.
The respondents appeared by an attorney who vigorously opposed the application, alleging that the finding of probable cause by the investigating commissioner was fatally defective and failed to confer upon the State Commission for Human Eights jurisdiction to hold a hearing, and that this court was without jurisdiction in the present proceeding to grant injunctive relief. It is the contention of the respondents that the evidence adduced during the course of the investigation was insufficient to justify a finding of fact by the hearing-commissioner.
The respondents’ attorney argued that the hearing- commissioner reached a legal conclusion and did not make a finding of fact based on evidence. He advised the court on his oral argument that he had repeatedly asked the petitioner’s attorneys to identify the act or acts of discrimination, but that at no time did the commission’s representatives inform him as to what specific act was considered discriminatory under the statutes.
The respondents urged that the determination of probable cause to credit the allegations of the complaint by the hearing-commissioner was not founded on fact. They deny that they are doing an act or procuring an act to be done tending to render ineffectual any order which the commission might issue. Finally, the respondents claim that the pertinent sections of the Executive Law are unconstitutional if said sections are interpreted to authorize the relief sought herein. It is the respondents’ position that such sections deprive the owners of their property without due process of law and without equal protection of the law.
*675 It is not necessary in this proceeding, in which injunctive relief is sought, for the court to pass upon all of the points raised by the respondents. The court need only determine whether the facts adduced justify the injunctive relief sought.
During the oral argument the respondents raised the question of entrapment by certain members of the Bye Council on Human Bights, which is not to be confused with the statutorily authorized Bye Commission on Human Bights. While the respondents may argue that the indulgence in the practice of entrapment is reprehensible, such practice does not appear to constitute a defense in the instant proceeding. In the first place, entrapment as a defense is normally asserted in criminal proceedings, and the present proceeding is administrative in nature only. Secondly, entrapment as a defense is not available even in criminal proceedings in this State wherein it is usually interposed. (See People v. Williams, 38 Misc 2d 80, and cases cited therein.)
Ultimately, in order to establish the acts alleged to have been discriminatory it will be necessary to prove that the refusal to rent was based on a violation of the statute and not merely on an inference that the refusal stemmed from a person’s race, color or creed.
As Mr. Justice Steuer stated in Martin v. City of New York (22 Misc 2d 389, 390): “ Just because a man is a Negro he is not, ipso facto, a desirable tenant. But the statute does not say that. It says the converse — because a man is a Negro he is not, ipso facto, an undesirable tenant.”
It is not the intention of the statute that the original inquiry by the landlord as to financial responsibility, desirability of the prospective tenant, and other factors may not be considered, so long as the tenant is not ultimately refused because of his race, color, creed or religion.
The court is asked to grant a drastic remedy on the basis of sharply conflicting affidavits and statements.
Temporary injunctive relief, as the courts have often pointed out, is a drastic remedy and should be resorted to only when it is clearly and convincingly established that the moving party is entitled to the relief it seeks. (See Voorhees & Hobart v. Hobart, 251 App. Div. 111; Gerken v. Hall, 65 App. Div. 16; Gilbert v. Burnside, 6 A D 2d 834.) The remedy sought herein can be had on papers alone without formal trial, without opportunity afforded to the opposing party for cross-examination and full exploration of the facts. It is in effect a judicial *676 determination based on affidavits without the right of confrontation, which can result not only in economic loss, but in this instance the labeling of a person as one opposed to the fundamental American doctrine of equality of person regardless of race, color or creed.
The court does not feel it should resort to such a drastic remedy as a mandatory injunction pending the determination of the issues by the commission itself, particularly where the defendant is practically without remedy in the event his position is not sustained.
As stated by Commissioner Giaccone in the article in the Brooklyn Law Review (vol. 29, pp. 185, 195): “ The law itself is now intensifying this educational process. That is why the Commission prefers not to act as a prosecutor in the first instance. It is a new technique brought forth by the 20th century to deal with an old problem. It is designated to avoid legal technicalities and to provide for opportunities of reaching an understanding among all concerned if possible. The law against discrimination offers guide posts along the road to a better and fairer future for all regardless of race, color, creed or national origin. The law speaks for a democratic government which cannot allow to exist in business or in the human relations among its citizens any standards which are inconsistent with its own principles of justice, equality and of the recognition of the dignity of the individual.”
This legislation in the words of Governor Rockefeller is a “ striving for equal opportunity for all to roll back the barriers of prejudice, foster progress toward greater human dignity and self-respect which is the basis for responsible citizenship ”.
As Governor Dewey pointed out at the Sesquicentennial Celebration of A. M. E. Zion Church, September 19, 1946. “ The task of establishing fairness and justice is not a simple one. It is comprised in the sacred teaching that we should love our neighbor and do unto others as we would have them do unto us. Nothing could be more simple than these inspired principles. But in our complex society nothing has been more difficult than putting them into practice. It is a task that has been achieved piece by piece, brick by brick ’ ’.
This is a matter, in the opinion of this court, that in the first instance should have been referred to the City of Rye Commission on Human Rights. It is not the purpose of statutes such as are involved in this proceeding to pit neighbor against neighbor and to engender bitterness and ill feeling, but to seek and establish the rights of individuals. Solutions of problems of *677 this nature can best be resolved as expressed in the words of the Scripture “ Come, let us reason together ”.
The application for a temporary injunction is denied for the reasons above stated.