Clare J. Hoyt, J.
This is a proceeding pursuant to section 298 of the Executive Law to review an order of the State Commission for Human Rights finding that the respondents engaged in an unlawful discriminatory practice in violation of section 296 (subd. 5, par. [a], cl. [1]) of the Executive Law by withholding a housing accommodation from a Negro complainant and directing the respondents to discontinue the practice and further to make available to commission representatives comprehensive information concerning all rental units owned by respondents' during the year immediately following the order. The matter is before the court on respondents’ petition seeking to set aside the order or alternately a remission of the matter to the commission for further proceedings. The commission has cross-petitioned for an order enforcing the commission’s order and dismissing the petition.
The respondents make two arguments in support of their position. First they claim that the commission proceeded without jurisdiction because of its failure to follow the procedures established by statute and the rules promulgated pursuant thereto. 'Second, claim is made that the commission’s factual finding of a discriminatory practice is not ‘ ‘ supported by sufficient evidence on the record considered as a whole ” (Executive Law, § 298) and must be set aside.
Section 297 of the Executive Law establishes the procedure for processing the complaint of a person claiming to be the victim of an unlawful discriminatory practice. Either the complainant or the Industrial Commissioner, the Attorney-General or the Human Rights Commission may ‘1 make, sign and file with the commission a verified complaint ” (subd. 1). Then one of the commissioners, with the assistance of the commission’s staff, shall make a prompt investigation in connection therewith. “ If the investigating commissioner, after such investigation, *678 shall determine that there is probable cause to credit the allegations of the complaint * * * the investigating commissioner shall immediately endeavor to eliminate such unlawful discriminatory practice by [conciliation and agreement or by noticing the complaint for an adversary hearing on the merits before three other commissioners] ” (subd. 2).
The testimony discloses that the complaint was prepared by a field representative of the commission after receiving a telephone call and report from the complainant on June 18, 1965. He then proceeded from Albany to Poughkeepsie where he met" the complainant. She reviewed the complaint, made three corrections and executed the same before a notary public. The commission’s field representative next called at the law oEce of the respondent who committed the allegedly discriminatory act and conferred with him for an hour and a half to determine his version of the transaction. The attorney respondent (hereinafter called respondent) was the only respondent who had any dealings with the complainant, the other respondents being-joined in the proceeding because of their joint ownership of the apartment that the complainant attempted to rent.
The commission’s field representative took eight pages of notes of his interview with the respondent and he made extensive use of these notes to refresh his recollection during his testimony before the hearing commission. The complaint alleged that in response to an advertisement of an apartment for rent the complainant had called the respondent and had made an appointment to see the apartment at 7:15 the evening of June 16, 1965. Upon arriving at the premises the complainant approached tho respondent and informed him that she had made an appointment to see the apartment. According to the complaint, the respondent told the complainant that the apartment “had already been rented to a couple who had just looked at it. ’ ’ Complainant asked the respondent if he would permit her to view the apartment but he declined saying* he was sure the apartment was rented. When asked if he had received a deposit on the apartment the respondent said no, but he continued to refuse to show the apartment to the eomplaitiant. All of the allegations of the complaint were discussed by the commission’s field representative and the respondent during their interview on June 18. The only material variations between the complaint and the respondent’s version of the transaction were that the respondent had not said a couple had rented the apartment but rather that two girls, one of whom was a school teacher, had looked at the apartment and were interested in renting it. The respondent was uncertain of the teacher’s address or how to contact her, *679 but he thought her name was Alper or Alpert. In explanation of his position the respondent stated that he had received a telephone call from the teacher who had indicated an interest in the apartment and he had agreed to hold it for her, subject to her inspection, for several days. Because of this agreement and because he did not wish to walk up two flights of stairs to show the apartment and because he did not like the complainant’s attitude, the respondent refused to show her the apartment.
With this information at hand the commission’s field representative called Albany and fully reported to the regional director in the commission office concerning his investigation. Some 20 minutes thereafter the field representative received a return call to the effect that the investigating commissioner had found or was finding probable cause. All of the investigation took place on a Friday. On the following Monday the investigating commissioner filed a formal decision finding probable cause and the matter thereafter proceeded to a full hearing.
At this point we stop to consider respondent’s contention that the proceedings are jurisdictionally defective. They argue first that the complaint was not filed in the commission’s Albany office prior to the designation of an investigating commissioner and the investigation thereon and thus, it is claimed, the failure of the commission to comply with section 297 and its own rules renders the proceedings jurisdictionally defective. No extended discussion of this point is required. It would seem that there was a constructive filing of the complaint when the commission’s field representative took possession of it after it was executed and verified by the complainant. But we need not rest our decision on that ground. The statutory provision requiring the filing of the complaint is directory and not mandatory. A failure to abide by a directory rule that does not affect a substantial right of a party is no ground for upsetting the entire proceeding. (See, e.g., Matter of Lake Placid Club v. Abrams, 6 A D 2d 469 affd. 6 N Y 2d 857.) There is no showing here that any substantial right of the respondents has been affected by the failure of the commission to physically file the complaint in its Albany office before commencing its investigation. Thus, respondents’ reliance on People ex rel. Jordan v. Martin (152 N. Y. 311), Matter of Stone v. Gross (25 A D 2d 753), Goldberg v. Board of Examiners (45 Misc 2d 967) and Service v. Dulles (354 U. S. 363) is misplaced. All of these cases involved deviations that affected substantial rights of the parties.
Respondents argue next that the investigation fell far short of that contemplated by section 297 and thus, they claim, the investigating commissioner’s finding of probable cause was *680 without warrant. On this premise the respondents urge that absent a proper investigation and a fair finding of probable cause the subsequent proceedings are jurisdictionally defective. It is apparent that the investigating commissioner had before him all of the information the complainant could supply and, more importantly, all of the explanations the respondent has made throughout these proceedings for his conduct. In sum the positions of the respective parties' were crystalized at the conclusion of the field representative’s investigation and subsequent proceedings have served only to amplify these positions. Respondents make much of the fact that the commission’s field representative made no attempt to find Miss Alper, the school teacher for whom respondent had promised to hold the apartment for several days. This is not only factually incorrect but it is also immaterial. The field representative questioned respondent concerning Miss Alper and received meager information at best. He had no responsibility to do more than make a reasonable effort to ascertain the identity of Miss Alper and her address. This was done during his interview with respondent and the information he received was less than helpful. But, more importantly, a verification of the story respondent told concerning Miss Alper would not materially affect the resolution of the dispute. Indeed her testimony at the hearing substantiated the respondent’s account of his conversation with her as given by the respondent at the initial interview and at the hearing. As to this there was, therefore, no substantial difference in the evidence before the investigating commissioner and the hearing commissioners. ‘1 Probable cause exists when there is reasonable ground of suspicion supported by facts and circumstances strong enough in themselves to warrant a cautious man in the belief that the law is being violated ”. (People v. Marshall, 13 N Y 2d 28, 34). Those facts and circumstances were present when the investigating commissioner properly found probable cause.
On the merits the commission’s determination must be sustained. The only question before the court is whether “ others might reasonably make the same choice ” as the commission in finding the facts set forth in its order (Matter of Stork Rest. v. Boland, 282 N. Y. 256, 274).
Respondent failed to satisfactorily explain his actions in this matter. In response to his advertisement in the newspaper offering this apartment for rent, he received a call in the middle of the afternoon on the day of publication from a Miss Alper and he agreed to hold the apartment for her for a few days. He knew nothing of Miss Alper except her identification to him *681 on the phone as a school teacher. Some hours later, he received a call from the complainant, also interested in the apartment and he arranged to meet her that evening in the apartment building. He did not know the complainant and when talking with her on the phone did not know she was colored. When he saw her at the apartment that evening he refused to show it to her and stated that he had committed himself to Miss Alper. The important thing is that he arranged over the phone with the complainant to show her the apartment and then immediately upon seeing her for the first time advised her he could not show her the apartment. His commitment to Miss Alper, whether it bound him legally or morally, did not justify his refusal to show the apartment to the complainant after he had arranged to do so which arrangements were made after his arrangements with Miss Alper. We cannot thus disturb the findings and conclusions of the commissioners. The petition is dismissed and the cross petition is granted.