Carrollton A. Roberts, J.
This is an application by show cause order for temporary injunctive relief, pursuant to subdivision 4 of section 297 of the Executive Law, pending a final determination by the Commissioner of Human Rights regarding a complaint alleging certain discriminatory practices in the sale of real property. The affidavit attached to the show cause order and the investigation report of the field representative of the State Commission for Human Rights set forth facts alleged by the commission to constitute probable cause for the filing of the complaint. Detailed affidavits in opposition were submitted on argument of the motion for the purpose of demonstrating that the institution of the investigation and the complaint were unfounded and that the investigating officer’s *38 finding of probable cause was unsupported by the pertinent facts.
The crux of the complaint and the investigation is that the complainant was discriminated against because of his color in that he was not permitted through his realtor or in person to submit a purchase offer and to negotiate for the purchase of the subject property with the defendant. There are certain conflicting factual allegations raised by the moving papers and the reply affidavit but the principal point raised by the reply affidavit is that, notwithstanding the allegations of discrimination, the complainant never offered the listing price for the property (the property was listed for $19,500 and complainant admittedly offered only $19,000) and further the offer submitted by the complainant was conditioned upon F.H.A. mortgage financing which the owner expressly had indicated was unacceptable to him (by reason of the delay incident to the processing of the application and the necessity of the seller paying points upon the closing). The listing contract annexed to the reply affidavit as Exhibit B sets forth the price as $19,500 and terms as being cash. In addition, the complaint submitted by the complainant admits that his offer was in the amount of $19,000 and that he knew that the owner was asking $19,500. A second purchase offer allegedly was accepted by the defendant owner after the alleged failure to consider the purchase offer of the complainant and, presumably, the possibility that the closing of title pursuant to this contract will occur before the Commissioner’s final determination is the reason for applying for injunctive relief. The possibility of the defendant being divested of title prior to the Commissioner’s final determination is in the opinion of this court a sufficient showing of the possibility of immediate and irreparable harm or injury necessary- to support an application for temporary or preliminary injunctive relief. This finding, however, must be based upon the assumption that the determination by the investigating officer of probable cause in this case is supported by the facts. The crucial question is whether this is necessarily so.
The constitutionality of the law against discrimination has been settled in any number of cases. (See, for example, Matter of Holland v. Edwards, 307 N. Y. 38, 43-44 [1954]; Gaynor v. Rockefeller, 15 N Y 2d 120, 132-133 [1965]; Matter of State Comm. for Human Rights v. Kennelly, 30 A D 2d 310 [2d Dept., 1968].) In addition the evolving Federal statutory and decisional law defining a governmental policy for the promotion and achievement of the maximum possible equality in housing opportunity must be recognized. (See, for example, Jones v. *39 Mayer Co., 392 U. S. 409 [1968]; Reitman v. Mulkey, 387 U. S. 369 [1967].) Given the obvious thrust of the State enactments and the even more liberal backdrop of Federal pronouncements in this area, it is with some caution that we proceed to an examination of the factual basis for the hearing examiner’s finding of probable cause.
It has been held that ‘ ‘£ Probable cause exists when there is reasonable ground of suspicion of facts and circumstances strong enough in themselves to warrant a cautious man in the belief that the law is being violated ’ ”. (Matter of Goldberg v. State Comm. for Human Rights, 54 Misc 2d 676, 680 [Sup. Ct., Dutchess County, 1966].)
Admittedly there is a fine line between what is and what is not discriminatory in these cases. Thus in Matter of State Comm, for Human Rights v. Kennelly (supra) the court stated (p. 312) as follows: “ I am mindful of the appellants ’ right to be selective and to reject a prospective tenant because of his or her failure to meet standards of acceptability other than those which concern themselves with one’s race or color or standards which are otherwise proscribed by statute.” Similarly the court stated in Matter of State Comm. for Human Rights v. Harvey Props. (50 Misc 2d 672, 675 [Sup. Ct., Westchester County, 1966]) that:
“ Just because a man is a Negro he is not, ipso facto, a desirable tenant. But the statute does not say that. It says the converse — ■ because a man is a Negro he is not, ipso facto, an undesirable tenant.
“It is not the intention of the statute that the original inquiry by the landlord as to financial responsibility, desirability of the prospective tenant, and other factors may not be considered, so long as the tenant is not ultimately refused because of his race, color, creed or religion. ’ ’
Superficially one might argue, as indeed the defendant must, that the mere failure of the claimant to proffer an offer in the amount requested and on the alleged terms insisted upon by the defendant, without more, defeats the claimant’s right to relief herein. But the case is not that simple. It is, however, common practice to offer less than the listed asking price as a method of commencing negotiations. If, as the investigation report tends to show, the owner was unwilling to even negotiate or submit a counteroffer simply by reason of the color of the complainant, prima facie a violation of a statute would be made out, notwithstanding the complainant’s initial failure to offer the listed amount. (In this regard the court has discounted the allegations regarding prejudice on the part of Mrs. Sanguedolce, insofar as she is not an owner of record.) Certainly, *40 this court recognizes that temporary injunctive relief in the case at bar may subject the .defendant to financial difficulties without the protection of an undertaking which normally is a condition precedent to the granting of injunctive relief. (See Matter of State Comm. for Human Rights v. Harvey Props., supra, p. 672.) However, the basic policy rationale for the statute mandates that the possible financial distress of the defendant be subordinated to the paramount public interest in achieving a parity of economic and housing opportunity. As Justice Steuee commented in Martin v. City of New York (22 Misc 2d 389, 391 [Spec. Term, New York County, I960]): “But whether it is or no, it is an additional instance where the individual must yield to what legislative authority deems is for the common good.” Nor is this court persuaded that a possible finding of discrimination in the case at bar is negated by the information submitted in the reply affidavit to the effect that the defendants have rented other property they own to Puerto Rican tenants and, in fact, previously rented an apartment to a Negro lady. Partial compliance with the statute is not enough. (Matter of Cooney v. Katzen, 41 Misc 2d 236 [Sup. Ct., Onondaga County, 1963].)
Admittedly, this is a close case but in the interests of justice and for the purpose of facilitating to the fullest the legislative intent and public policy underlying the antidiscrimination legislation, the temporary restraining order is continued until the final hearing and decision of the Commissioner in this matter.