Max Bloom, J.
Petitioner, Chairman of the State Division on Human Rights, moves to restrain the city police department from making any further temporary appointments to the department pending the determination of the complaints filed with it. In brief, the facts are as follows:
By reason of the fiscal stringency facing the city, the police department was required, on June 30, 1975, to lay off 2,864 police officers. Additionally, the department was required to meet an attrition quota of 3,000 police officers during the period 1975-1977. Both quotas were met. However, asserts the department, by consequence of meeting these quotas, its efficiency was impaired. Consequently, it sought and obtained Federal funding from various sources in order to augment its personnel.
Pursuant to the provisions of sections 80 and 81 of the Civil Service Law, the police officers laid off by the department were laid off in inverse order of their appointment and were placed on a preferred hiring list and, as Federal funds became available, rehiring took place from the list in the order of preference. Thus, on March 31, 1976, 205 police officers were rehired for one year under a United States Labor Department grant. On August 13, 1976, 60 more were rehired for a like period under a Law Enforcement Assistance Administration grant. In March, 1977, additional funds for the rehiring of 250 police officers were made available under the Comprehensive Education and Training Act (CETA). Two hundred and forty-seven appointments have been made under that grant.
The current application concerns itself with the remaining three vacancies and is predicated upon the claim that the filling of these vacancies would discriminate unlawfully against former police officers Bernice Luhrs and Madeline Stangas.
Luhrs and Stangas were among the 2,864 police officers laid off in 1975 and placed upon the preferred list. Their numbers were reached with the CETA funded call up. In order to *735 qualify for rehiring each was required to undergo a physical examination. Each was and is pregnant. Each underwent an examination by her personal physician and each submitted a certificate overing that she was fit for duty. Notwithstanding, the police surgeon found each to be unfit for duty, allegedly under the terms and conditions of the CETA grant, by reason of her pregnancy.
The Human Rights Law (Executive Law, §§ 290-301) provides that it shall be unlawful for an employer to refuse to hire or employ or to bar or discharge from employment any person because of age, race, creed, color, national origin or sex or to discriminate against such person with respect to compensation or in terms, conditions of privileges of employment (Executive Law, § 296, subd 1, par [a]). Subdivision 9 of section 297 confers upon any person claiming to be aggrieved by any practice declared to be unlawful, the right to pursue such grievance in any court of appropriate jurisdiction while the remaining subdivisions of section 297 authorize the filing of a complaint with the Division of Human Rights and the procedures to be followed by the division after such complaint has been filed. However, under subdivision 9 of section 297 and section 300, the remedies are mutually exclusive. Where one remedy has been pursued the other is not available save in the one situation where a complaint filed with the Human Rights Division has been dismissed for administrative convenience (Gaynor v Rockefeller, 21 AD2d 92; affd 15 NY2d 120).
Inasmuch as no final disposition has yet been made of the matter by the division, it is clear that the court may not concern itself with the merits of the controversy (Matter of Moskal v State of New York, Executive Dept., Div. of Human Rights, 36 AD2d 46; Matter of Richards v Mangum, 35 AD2d 124; Matter of State Div. of Human Rights v Merante, 35 AD2d 652), and the division is required to pursue the matter to a conclusion before judicial intervention may be sought.
Thus stated, the issue before us reduces itself to two narrow questions. The first is: "Does subdivision 6 of section 297 authorize intervention by the court to insure that a proceeding before the division remains in status quo while the proceeding is pending?” To this the short and simple answer is that the statute confers upon the court the power to enjoin acts by a respondent when it is determined "that the respondent is doing or procuring to be done any act tending to render ineffectual any order the commissioner may enter in *736 such proceeding”. The second question, necessarily flows from the first. “Are the actions threatened by respondent such, that they may defeat any order hereafter entered by the division?” Here, again, the answer must be in the affirmative. Were respondent to make the three appointments which it now contends it is ready to make, any remedy which the division may endeavor to fashion may prove fruitless (cf. Matter of Sable v Wantagh School Dist. No. 23, 69 Misc 2d 667; Matter of Mangum v Sanguedolce, 58 Misc 2d 37). In the circumstances, judgment restraining respondent from making an appointment to fill the vacancies in question pending determination of the complaint now before the division must be granted.