161 N.J. Super. 218 (1978)
391 A.2d 558
ARCHIE L. SPRAGUE, APPELLANT,
v.
GLASSBORO STATE COLLEGE AND MARK M. CHAMBERLAIN, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 30, 1978.
Decided August 2, 1978.
*220 Before Judges FRITZ, ARD and GAULKIN.
Mr. Archie L. Sprague, appellant, pro se.
Mr. John J. Degnan, Attorney General of New Jersey, attorney for the respondents (Mr. William F. Hyland, former Attorney General of New Jersey, and Ms. Erminie L. Conley, Deputy Attorney General, of counsel; Mr. Joseph M. Gorrell, Deputy Attorney General, on the brief).
PER CURIAM.
Appellant, a nontenured instructor, filed a verified complaint with the New Jersey Division on Civil Rights alleging that Glassboro State College and Mark M. Chamberlain, its president, had discriminated against him because of his age (26 years) when denying him reappointment which would have resulted in his acquiring tenure. The Division on Civil Rights, through its field representative, made an investigation of appellant's allegations and concluded:
* * * [O]ur investigation revealed that you were denied tenure not because of your age but because you lacked a doctorate or extensive business experience.
As a result of these findings, the Director determined pursuant to N.J.S.A. 10:5-14 that there was no probable cause to credit the allegations of the complaint and ordered the case closed without a plenary hearing. It is from this order that appellant appeals.
Appellant was originally hired in 1972 as an instructor in the Administrative Studies Department. The term of the contract was one year (1972-1973) and the contract was contingent on appellant acquiring an M.B.A. degree prior to August 31, 1972. He was reappointed as an instructor *221 for one-year periods effective September 1973 and 1974. Pursuant to N.J.S.A. 18A:60-12, appellant elected to be reviewed for tenure during his third year. After reviewing appellant's teaching performance, his scholarship and work in professional organizations, the Interdepartmental Committee evaluating appellant's tenure application voted not to recommend appellant for tenure. It articulated its reasons as follows:
Central to the Committee's misgivings were the feelings that Mr. Sprague's experience background was at best scanty for a Department for which a rich background of actual business experience is a most desirable attribute. Too, the Committee expresses concern on the status of Mr. Sprague's doctoral progress. Finally, the Committee is not convinced that the available evidence indicates that Mr. Sprague's classroom teaching performance approaches the undisputed degree of competence needed to make Glassboro a quality educational institution.
This recommendation was received by the "All College Senate Committee on Tenure and Recontracting," which unanimously concurred. This record was then reviewed by the acting dean, who concurred with the aforementioned committee and recommended that appellant not be granted tenure. Thereafter the matter was taken under advisement by the college president, who informed appellant that he could not recommend reappointment, concluding:
Absent strong affirmation and documentation of teaching excellence and absent the terminal degree without conditions that would demonstrate that waiving this requirement would be in the best interests of the college, I cannot recommend for reappointment that will carry tenure under law.
This decision was subsequently affirmed by the board of trustees, and appellant filed a grievance under the existing collective bargaining agreement, alleging that he had been subjected to irregularities in the tenure evaluation process. The denial of tenure was upheld on all three steps in the grievance procedure. Appellant then sought arbitration; *222 however, before the arbitration hearing began, the parties entered into a settlement agreement. The terms of the agreement provided for a Remandatory Committee made up of five members, two chosen by the college, two by the union and a fifth chosen by the original four. The committee was to evaluate appellant's competence and current mental health. The committee reviewed the record relating to appellant's tenure application and considered other evidence, both written and oral. It concluded that appellant should be reconsidered for reinstatement as a teacher at Glassboro State College. The conclusions of the Remandatory Committee were forwarded to the president who, after reviewing the report, again decided against the appellant. He reasoned as follows:
The decision to reinstate you as a member of the faculty of Glassboro State College would be, in fact, a determination to offer you recontracting that would confer tenure status. The weight of evidence does not support such a determination and thus, it is my best judgment that you should not be offered reinstatement and a contract which would confer tenure.
It was during the grievance procedure that appellant filed a complaint in the Division on Civil Rights alleging discrimination because of age. At the time he was 26 years old. He supported his allegation by reference to his department head's letter to the chairman of the Administrative Studies Tenure and Recontracting Committee in which the department head, in a three-page analysis of his background and qualifications, alluded to his lack of experience in the field of marketing as well as his lack of a doctorate. His allegation is also based in part on a memorandum from the Dean of Administrative Studies to the Vice-President for Academic Affairs relating to a suggested policy for terminal degree qualifications. With respect to the criteria for granting tenure, this memorandum suggested:
In evaluating professional faculty for recontracting and tenure, we divide the faculty into three basic groups  young, middle-age *223 and over 55. We expect all of the younger (under 35) faculty members to complete the doctorate degree in order to receive tenure. An exception to this might be for a person who holds a JD or combination MBA and CPA. For the 35 to 55 age group, we strongly encourage the completion of a doctorate degree, however, we would be satisfied with a combination of MBA and CPA, or JD. For the over 55, we encourage graduate study, but recognize that the commitment of the college in granting tenure to an individual in this age group is rather short. Hence, if a person holds a bachelor degree and has a distinguished career, we would recommend that person for tenure without further study, provided of course, competence in teaching, professional service, and other qualifications have been met.
In recommending a finding of no probable cause, the field representative for the Division on Civil Rights ascertained that, despite the existence of the aforementioned memorandum, a case of age discrimination could not be made out. The representative's examination of the evidence demonstrated a consistent tenure policy without regard to age. The age recommendations set forth in the memorandum had never been implemented. Moreover, the investigation revealed the tenured faculty covered a broad spectrum of ages. The ultimate findings of the field representative were set forth in her "Final Case Disposition Report":
The investigation revealed that the respondents grant tenure in the Administrative Studies Department either to individuals who have a doctorate or a comparable amount of experience in business. The complainant had neither a doctorate nor extensive experience in business. Therefore, he was denied tenure. A review of all the people granted tenure by the respondents revealed that they do require a doctorate, a comparative degree such as a Masters in Law or extensive business experience. The complainant possessed none of these and therefore was not granted tenure.
The legislative foundation to appellant's claim of unlawful discrimination because of age is found in N.J.S.A. 10:5-4 and N.J.S.A. 10:5-12(a). N.J.S.A. 10:5-4 provides:
All persons shall have the opportunity to obtain employment, * * * without discrimination because of * * * age * * * subject *224 only to conditions and limitations applicable alike to all persons. * * *
N.J.S.A. 10:5-12(a) provides it shall be an unlawful employment practice or discrimination:
a. For an employer, because of * * * age * * * of any individual, * * * to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment * * *.[1]
Although the factual background is important to our determination in this matter, we are not being called upon to decide the merits of appellant's entitlement of tenure. The underlying issues for us to decide are: (1) whether the determination of the Director that no probable cause exists "for crediting the allegations of the complaint" constitutes an abuse of discretion, and (2) whether the appellant is entitled to a plenary hearing in the Division by virtue of the due process clause of the Fourteenth Amendment before a determination of "no probable cause" is made.
The record reveals that the field representative spent more than 46 hours interviewing witnesses and analyzing documents before making her recommendation. The Director, as a result of this investigation, made a finding that no probable cause existed for crediting the allegation of the appellant. Although not defined in the Law against Discrimination, in the analogous field of civil rights "probable *225 cause" has been defined as a "`reasonable ground of suspicion supported by facts and circumstances strong enough in themselves to warrant a cautious man in the belief that the law is being violated.'" Barnes v. Goldberg, 54 Misc.2d 676, 680, 283 N.Y.S.2d 347, 352 (Sup. Ct. 1966), quoting People v. Marshall, 13 N.Y.2d 28, 34, 241 N.Y.S.2d 417, 421, 191 N.E.2d 798, 801 (Ct. App. 1963).
After examining the entire record, we are satisfied the appellant was denied tenure because he failed to meet the uniform standards of the college. The Director's finding of no probable cause was not an abuse of discretion. Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973); Tomko v. Vissers, 21 N.J. 226, 241 (1956); Kotlarich v. Ramsey, 51 N.J. Super. 520, 540 (App. Div. 1958). See Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 409-410 (1973).
While appellant may legitimately question the opinions and conclusions of the individuals involved in the decisional process which resulted in the final determination by the President of the college, there is no basis to conclude the decision was made because of appellant's age. The record amply demonstrates an evenhanded evaluation process which obliterates appellant's allegation.
Moreover, the administrative mechanism for investigating complaints of this nature is not in violation of the due process clause of the Fourteenth Amendment. The statute mandates an investigation to determine whether there was probable cause to credit the allegations of the complaint. N.J.S.A. 10:5-14. This administrative procedure established by the Legislature to afford individuals with a reasonably efficient method of processing discrimination complaints is not an exclusive remedy. Prior to initiating this complaint in the Division appellant had the alternative right to file a complaint in the Superior Court which would normally culminate in a full-scale plenary trial. N.J.S.A. 10:5-27; Zahorian v. Russell Fitt Real Estate Agency, supra, 62 N.J. at 417, n. 1 (Hall, J. dissenting in part).
*226 In choosing the alternative administrative mechanism by filing the complaint with the Division on Civil Rights, appellant was availing himself of a means of redress normally swifter and less expensive than formal litigation. Having established the alternative administrative mechanism of the Division on Civil Rights, it was proper for the Legislature to devise procedures enabling the agency to deal with large numbers of complaints as swiftly as possible. See David v. Vesta Co., 45 N.J. 301, 316 (1965) (authorizing the Legislature to exclude certain types of real property from the reach of the Law Against Discrimination because they might entail "greater problems of enforcement, regulation and administration").
The initial culling-out process whereby the Legislature empowered the Division to investigate complaints and make initial fact-finding as to the merits is not a denial of due process. As we have indicated, there is the alternative plenary hearing. More importantly, the concept of due process of law is not inflexible or uniformly mechanistic in its application to every situation. Cafeteria Workers v. McElroy, 367 U.S. 886, 894-895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). A litigant is not entitled to a plenary hearing in all circumstances. See, e.g., Elizabeth v. Sullivan, 125 N.J. Super. 569, 573 (App. Div. 1973). In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the court noted that the concept of due process is flexible and calls for such procedural protections as the particular situation demands. There it is pointed out that a resolution of whether the administrative procedure used is constitutionally sufficient requires a balancing of three distinct factors:
* * * first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [at 335, 96 S.Ct. at 903 citation omitted]
*227 The New Jersey Law Against Discrimination was designed to
* * * effectuate, by expeditious administrative action, speedy, specific relief to the individual complainant discriminated against and to prevent the discriminating party from engaging in such wrongful acts against others in the future. The agency is directed to investigate and prosecute proceedings on behalf of complainants to accomplish those objectives. The scheme is thus clearly not one to provide for a conventional law suit, with all its trappings and delays, before an administrative tribunal. * * * [Zahorian v. Russell Fitt Real Estate Agency, supra, 62 N.J. at 417-418 (Hall, J., dissenting in part)].
We are satisfied the New Jersey Law Against Discrimination meets the test of Mathews, supra.
Moreover, appellant erroneously relies on Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), in contending that he was entitled to a plenary hearing in the Division. Goldberg established the right to an informal hearing before welfare benefits could be terminated. A nontenured teacher does not have a constitutional right to a hearing regarding his nonretention. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Cf. Donaldson v. North Wildwood Bd. of Ed., 65 N.J. 236 (1974). More importantly, this argument goes to the question of appellant's right to a hearing by the college. In that regard the college has been lavish in its procedural fairness to appellant.
Furthermore, this contention has been raised and rejected by California and New York courts with similar statutes. In Marshall v. Fair Employment Practice Comm'n, 21 Cal. App.3d 680, 98 Cal. Rptr. 698 (D. Ct. App. 1971), the Commission closed the file on a termination because of a race complaint after its investigation could not support the charges. Marshall argued that he was entitled to a hearing on his complaint under the due process clause, citing Goldberg, supra, and Caulder v. Durham Housing Auth., 433 *228 F.2d 998 (4 Cir.1970). The court rejected the argument, stating:
* * * Neither case is in point. Goldberg deals with the constitutional right to a hearing before the termination of welfare benefits; Caulder tackles the same problem in connection with evictions from public housing projects. Both simply hold that state deprivals of state conferred benefits must, in those situations, be preceded by hearings held in conformity to rudimentary due process notions. In the case at bar the state has not deprived petitioner of anything. It has merely refused to act affirmatively. The availability of judicial relief in a proper case seems adequate protection against arbitrary actions by the commission.
Of course, no such arbitrary refusal to proceed to a hearing is shown here. While the commission investigation may not have been the most complete imaginable, neither is the record furnished to us. Without again going into details, the decision to drop the matter was well within the limits of the discretion which the Legislature granted the commission. [21 Cal. App.3d at 685, 98 Cal. Rptr. at 701-702; footnote omitted]
See also, Mahdavi v. Fair Employment Practice Comm'n, 67 Cal. App.3d 326, 136 Cal. Rptr. 421 (D. Ct. App. 1977).
In Jackson v. New York State Div. of Human Rights, 42 A.D. 2d 684, 345 N.Y.S.2d 735 (App. Div. 1973), the court upheld the Division's dismissal of a female employee's sex discrimination charge on its determination that there was no probable cause for the charge. The complainant on appeal contended that the determination was arbitrary and capricious and she was denied due process of law by failure of the Division to grant her a formal hearing with opportunity to present witnesses and to cross-examine witnesses for respondent. The court noted that although it would have been better practice for the Division to have conferred further with complainant concerning substantial information which it had gathered that her demotion was not the result of sex discrimination, the adverse determination was not arbitrary or capricious or an abuse of discretion. With regard to the due process claim, the court held that where the many issues tendered did not directly *229 challenge the essential basis for the employer's action, a hearing was not required.
We are satisfied appellant's constitutional claims have no merit. He elected the administrative route rather than formal litigation. He was not deprived of a right but given an alternative remedy. Our review of the record mandates agreement with the conclusions of the Director.
Affirmed.
NOTES
[1] This section was amended by L. 1977, c. 96, § 2, effective May 19, 1977, and by L. 1977, c. 122, § 2, effective June 6, 1977. However, the substantive changes have no bearing on the issues involved in this case. Moreover, the amended statute should be "* * * given prospective application only unless the changes are merely procedural or the Legislature specifically indicates otherwise. Skulski v. Nolan, 68 N.J. 180, 202 (1975); Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 381 (1954). * * *" Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 73 (decided July 5, 1978).