**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5554-14T3

RUGIATU SESAY,

    Complainant-Appellant,

v.

BAYSHORE COMMUNITY HOSPITAL,

    Respondent-Respondent.

_____

Submitted April 4, 2017 — Decided April 19, 2017

Before Judges Ostrer and Vernoia.

On appeal from the New Jersey Division on
Civil Rights, Department of Law and Public
Safety, Docket No. EN18WB-63987.

Rugiatu Sesay, appellant pro se.

Fox Rothschild LLP, attorneys for respondent
Bayshore Community Hospital (William M.
Honan, of counsel; Sarah Beth Johnson, on
the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent New Jersey Division
on Civil Rights (Andrea M. Silkowitz,
Assistant Attorney General, of counsel;
Beverley A. Lapsley, Deputy Attorney
General, on the brief).

PER CURIAM

Rugiatu Sesay appeals from a June 29, 2015 final agency determination of the New Jersey Division on Civil Rights (Division) finding no probable cause supporting her claim that Bayshore Community Hospital (Bayshore) engaged in national origin and disability discrimination and retaliation in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. We affirm.

Sesay became employed at Bayshore in 1995 as a nurse's aide. In 2007, Sesay was promoted to the position of registered nurse, and was employed in that capacity until May 2013, when Bayshore terminated her employment.

On June 18, 2013, Sesay filed a verified complaint with the Division alleging Bayshore discriminated against her by terminating her employment based on her national origin,[1] her alleged disability, and in retaliation for making a prior complaint about national origin discrimination. Bayshore disputed the allegations, claiming Sesay was terminated in accordance with its established progressive discipline policy for multiple performance issues.

The Division investigated Sesay's allegations. The Division served a document and information request upon

_____

[1] Sesay alleged she was born in the Republic of Sierra Leone.

Bayshore. Bayshore's responses included a detailed written statement of position and answers to the Division's information requests. In response to the Division's document demands, Bayshore provided handbooks and policy manuals, job descriptions, policies, grievance procedure records, and the complete personnel files of Sesay and two other employees, M.Z. and L.R.[2] Sesay had alleged M.Z. and L.R. did not share her national origin, alleged disability, or history of complaining about discriminatory treatment and were not terminated although they engaged in the same conduct that Bayshore relied upon to terminate Sesay's employment. The Division also interviewed Bayshore's vice president of nursing, Sesay's nurse manager, a nurse manager who reviewed a complaint made by Sesay concerning discipline that had been imposed, and two black registered nurses about their treatment as Bayshore's employees. One of the nurses was from Cameroon and the other was from the West Indies.

In a detailed report, the Division found

> the investigation did not support [Sesay's] allegation that [Bayshore] discriminated against her based on her national origin or race.[3] The investigation found that [Sesay]

[2] We employ initials to protect the privacy of the personnel information of these non-parties to this dispute.

[3] Although Sesay's verified complaint did not allege race discrimination, the Division considered and investigated her
(continued)

had four performance infractions stemming from patient complaints, and that in accordance with its progressive disciplin[ary] policy, [Bayshore] discharged her. The investigation showed that [Bayshore] imposed progressive discipline for employees of other races and national origins for similar conduct. Regarding her allegation of disability discrimination, [Sesay] acknowledged that [Bayshore] granted her ten weeks of medical leave, and plainly stated that [Bayshore] did not discharge her because she took medical leave or because of any medical condition. Lastly, the investigation showed no causal link between [Sesay's] 2011 internal complaint of race discrimination and her 2013 discharge. Rather, the investigation showed that in 2011 [Bayshore] reviewed [Sesay's] race discrimination complaint, determined that [Sesay] had been differentially treated in a discipline matter because of her race, and rescinded the discipline. Based on the investigation, and in the absence of any persuasive evidence of a discriminatory or retaliatory animus, this case is closed [based on a finding of no probable cause].

On June 25, 2015, the Division "determined pursuant to N.J.S.A. 10:5-14 and N.J.A.C. 13:4-10.2 that there is no probable cause to credit the allegations of the complaint and the file is therefore closed." This appeal followed.

On appeal, Sesay argues:

_____

(continued)
national origin discrimination claim also as a claim of racial discrimination.

THE DIVISION [ON] CIVIL RIGHTS FAILED TO PROPERLY INVESTIGATE THE CASE AND IT SHOULD BE DECIDED BY A JURY.

Our review of the Division's decision is a limited one. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988). "We accord 'a "strong presumption of reasonableness" to an administrative agency's exercise of its statutorily delegated responsibilities.'" Wojtkowiak v. New Jersey Motor Vehicle Comm'n, 439 N.J. Super. 1, 13 (App. Div. 2015) (quoting Lavezzi v. State, 219 N.J. 163, 171 (2014)). We "must survey the record to determine whether there is sufficient credible competent evidence in the record to support the agency head's conclusions." Ibid. (quoting Clowes, supra, 109 N.J. at 587).

We are also required to give due regard to the agency's expertise. Ibid. "We may reverse the Director's decision only if 'the Director's finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction.'" Ibid. (quoting Clowes, supra, 109 N.J. at 588). We "will not upset an agency's ultimate determination unless the agency's decision is shown to have been 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Ibid. (quoting Barrick v. State, 218 N.J. 247, 259 (2014)).

Here, Sesay makes two arguments. She first asserts the Division failed to properly investigate her claim. The Division is authorized to conduct investigations following the filing of a verified complaint alleging discrimination under the LAD, N.J.S.A. 10:5-14; N.J.S.A. 10:5-8(d), (h). The Division may "conduct such discovery procedures . . . as shall be deemed necessary . . . in any investigation." N.J.S.A. 10:5-8(i). "This 'discretionary authority to investigate' is reviewable for an abuse of discretion." Wojtkowiak, supra, 439 N.J. Super. at 21 (quoting Gallo v. Salesian Soc'y. Inc., 290 N.J. Super. 616, 650 (App. Div. 1996)).

Sesay's contention that the Division failed to investigate her allegations is undermined by the record. The Division conducted a comprehensive investigation over a two-year period that included the review of over 900 pages of documents, interviews with Bayshore's employees, numerous interactions with Sesay, and a careful assessment of Sesay's claims in light of the evidence. We discern no abuse of the Division's discretion in the manner in which the investigation was conducted and Sesay fails to demonstrate otherwise.

Sesay's second argument is that her discrimination and retaliation claims should be decided by a jury. A person alleging discrimination or retaliation under the LAD has a

choice of remedies: they "may pursue their claims administratively, by filing a verified complaint with the [Division], or judicially, by directly instituting suit in the Superior Court." Hernandez v. Region Nine Housing Corp., 146 N.J. 645, 652 (1996) (citing N.J.S.A. 10:5-13). Filing a complaint in the Superior Court "would normally culminate in a full-scale plenary trial" before a jury. Sprague v. Glassboro State Coll., 161 N.J. Super. 218, 225 (App. Div. 1978); see N.J.S.A. 10:5-13 (providing for jury trials in Superior Court suits alleging violations of the LAD). Sesay did not opt to file her complaint in the Superior Court here.

Sesay selected the Division as the forum in which her complaint would be decided, thereby taking advantage of the more expeditious administrative process. Hermann v. Fairleigh Dickinson Univ., 183 N.J. Super. 500, 504-05 (App. Div.), certif. denied, 91 N.J. 573 (1982). "[H]aving chosen to pursue her grievance administratively, [however], that chosen remedy [was] exclusive while it [was] pending and when it [had] been concluded." Id. at 504; N.J.S.A. 10:5-27. The administrative remedy chosen by Sesay does not permit or provide for a jury trial. See Martindale v. Sandvik, Inc., 173 N.J. 76, 93 (2002) (explaining "a jury trial is not applicable" in administrative

proceedings under the LAD). Thus, Sesay is not entitled to the jury trial she requests for the first time on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5554-14T3