43 N.J. Super. 209 (1957)
128 A.2d 288
MORRISTOWN TRUST COMPANY, AS TRUSTEE, ET AL., PLAINTIFFS,
v.
PAUL L. THEBAUD, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 2, 1957.
*211 Mr. Benjamin Franklin, 3rd, for the plaintiffs (Messrs. Jeffers, Mountain & Franklin, attorneys).
Mr. John D. McMaster, for the defendant Paul L. Thebaud.
Mr. F. Morse Archer, Jr., for the defendants Edward P. Thebaud, Jr., and Ursula H. Thebaud (Messrs. Archer, Greiner, Hunter & Read, attorneys).
Mr. Clifford W. Starrett, for the defendant Morristown Trust Co., as trustee of trust created by Edward P. Thebaud, Jr. (Messrs. Schenck, Smith & King, attorneys).
Mr. Louis S. Freeman, for the defendants Dorothy H.C. Thebaud and Morristown Trust Co., as trustee of trust created by Louis B. Thebaud (Messrs. Freeman & O'Donnell, attorneys).
STANTON, J.S.C.
The plaintiff Morristown Trust Company, as substituted trustee of three certain trusts and co-trustee of another, and Paul L. Thebaud as co-trustee of such fourth trust bring this action for the construction of two writings relating thereto made by some of the beneficiaries of said trusts, for the determination of the effect of a prior judgment of this court upon one of said agreements and for instructions with respect to the distribution of the several trusts.
It is unnecessary to go into the creation or the terms of said trusts, except to state that at the time with which we are concerned the plaintiffs held the same on these conditions, namely, to pay to Louisa J. Thebaud, wife of Edward P. Thebaud, the income thereof during her lifetime, and upon her death to distribute the remainder in equal shares to her children then living, and the issue of any deceased *212 child  such issue to receive the parent's share. At the time of the execution of such writings she had three sons, Paul L. Thebaud, Louis B. Thebaud and Edward P. Thebaud, Jr. Under these trusts, which for convenience will be called the ancestral trusts, each of the sons had a vested remainder in one-third of the corpus subject to being divested if he predeceased his mother leaving no issue. Each of the sons had an interest in his brothers' shares contingent on the latter or either of them predeceasing their mother and leaving no issue.
The first of the writings that we are called upon to construe is an agreement entered into by the three sons and their wives on August 13, 1937. None of the sons, then or since, had issue. In it, after a description of the four ancestral trusts and a recital that the vested remainder of each of the sons was subject to divestiture if he predeceased his mother without issue, there is this recital:
"WHEREAS, in the event any of the said Paul L. Thebaud, Louis B. Thebaud and Edward P. Thebaud (Jr.) should predecease the said Louisa J. Thebaud leaving no issue, but survived by a widow, it is desired that such widow be provided for or that the share of the one so dying should be disposed of in such manner as the one so dying shall direct."
Then follows this provision:
"* * * that in the event any of the said Paul L. Thebaud, Louis B. Thebaud and Edward P. Thebaud [Jr.] shall predecease the said Louisa J. Thebaud, the share of the one so dying shall be by said trustees and their respective successors in office made over, paid and delivered to the order of the one so dying, pursuant to such instructions in writing as he may in his life time make and file with the said trustees, or failing that, to his executors or as he may in and by his last will and testament direct and appoint; * * *." (Emphasis added.)
And it is further provided that the parties
"do assign, set over, transfer, release and convey to the others of the undersigned, all their respective right, title and interest in such part of the funds constituting the above described trusts as would *213 go to enlarge (emphasis added) the shares of any of the undersigned in the event of the death of one or more of the others prior to the said Louisa J. Thebaud."
The next writing with which we are concerned is an indenture of trust entered into on September 18, 1937, between Edward P. Thebaud, Jr. as settlor and Morristown Trust Company as trustee, hereinafter called the instant trust indenture. In it there is a recital of the four ancestral trusts and the manner in which they were created, and of the fact that the settlor's interest is subject to divestiture in the event that he should predecease his mother, leaving no issue, and of his desire "to provide for his widow should he predecease his mother." After a reference to the agreement of August 13, 1937 and its salient provisions, the indenture provides as follows:
"WHEREAS, the Settlor has filed with the trustees of said trusts a duly executed copy of said agreement and has notified said trustees in writing that the interest which he shall take pursuant thereto shall be made over, paid and delivered to the Morristown Trust Company, as Trustee to be held and administered by said trustee, pursuant to the terms of this indenture;
NOW THEREFORE, in consideration of the premises and of the sum of One Dollar, by each of the parties hereto to the other in hand well and truly paid, at or before the ensealing and delivery of these presents, receipt of which is hereby acknowledged, the said Settlor, for himself, his executors and administrators, hereby confirms the agreement and assignment hereinabove referred to and hereby sets over, transfers and assigns unto the said Trustee hereinabove named its successors and assigns, all his right, title and interest in any funds which he shall receive pursuant to said agreement;
TO HAVE AND TO HOLD the same unto the said Trustee, its successors and assigns, IN TRUST, nevertheless, for the following uses and purposes, that is to say:
I. To receive, receipt for, hold, manage, invest, reinvest and to keep the same invested as one fund, and during the trust term herein determined to pay over the net income therefrom in quarterly or more frequent payments as follows:
(1) Ten per centum (10%) of the annual net income to a reserve fund to be set up by the trustee to insure against depreciation or loss of principal during the continuance of this trust, provided however, that when said reserve fund, at the end of any calendar year, shall equal twenty per centum (20%) of the corpus of the estate at the time of the inception of said fund, further payment to the reserve fund from income may be omitted *214 for that year. It being understood and agreed that any moneys in the reserve fund shall be invested and reinvested by the Trustee, and kept invested as a part of the corpus of this trust. The income of the reserve fund is to be disposed of as other income of the trust estate as hereinafter provided.
(2) To pay to the Settlor so long as he shall live, and upon his death to his widow, URSULA HILL THEBAUD if she shall then survive, and to continue to do so so long as she shall live or until she shall remarry, the balance of net income from the trust estate, with proportionate reduction for the reserve fund hereinabove provided for.
II. Upon the death of the survivor of said Settlor and URSULA HILL THEBAUD, his wife, or upon the remarriage of the said URSULA HILL THEBAUD if she should survive the said Settlor and remarry, to make over, pay and deliver the trust estate, including the reserve fund and the income accumulated and accrued thereon, to the heirs-at-law of Edward P. Thebaud (Sr.), father of the Settlor, as they shall exist at the date of death of the Settlor and his said wife and in accordance with the laws of the State of New Jersey in effect at the date of the death of the said Settlor."
Then follow various provisions dealing with the administration of the trust with which we are not presently concerned.
It is to be noted that on September 7, 1937 Louis B. Thebaud, as settlor, entered into a similar trust indenture with Morristown Trust Company as trustee.
Louisa J. Thebaud died on June 13, 1955. Louis B. Thebaud died on October 16, 1938 without issue and leaving a widow, Dorothy H.C. Thebaud, who survives.
Upon the death of Louisa J. Thebaud, the corpus of the four ancestral trusts was distributable. In the absence of the agreement of August 13, 1937, Paul L. Thebaud and Edward P. Thebaud, Jr. would each have been entitled to one-half of the ancestral trust estates because Louis B. Thebaud had predeceased his mother and left no issue.
Paul L. Thebaud concedes that by virtue of the agreement of August 13, 1937 he released his right to have his share of the trusts enlarged from one-third to one-half by reason of the prior death of his brother Louis without issue. He contends that he is presently entitled to one-third of the corpus of the ancestral trusts, and that a like one-third is now payable to the Morristown Trust Company as trustee under the trust created on September 7, 1937 by his brother *215 Louis B. Thebaud, and that a like one-third is payable to Morristown Trust Company as trustee under the trust created on September 18, 1937 by his brother Edward P. Thebaud, Jr.
Edward P. Thebaud, Jr. and his wife contend that he is entitled presently to one-third of the corpus of the ancestral trusts. They concede that Paul L. Thebaud is entitled presently to a like one-third. As to the remaining one-third, they agree that it is payable to the Morristown Trust Company as trustee under the trust created by Louis B. Thebaud on September 7, 1937.
Thus it appears that the basic issue is whether one-third of the corpus of the ancestral trusts is payable outright to Edward P. Thebaud, Jr., or to the Morristown Trust Company as trustee under the indenture entered into between them on September 18, 1937.
The question of res adjudicata is raised by virtue of the determination in Thebaud v. Morristown Trust Company, 8 N.J. Super. 540 (Ch. Div. 1950). There the demands for relief were as follows:
(a) That at the time of the execution of said agreement of September 18, 1937, it was the intention of plaintiff that said agreement should merely provide direction for the management and control of his property, securities and assets and that the same should contain a power of revocation.
(b) That by inadvertence, error and mistake said agreement failed to include an express power of revocation.
(c) That by mistake there was omitted from said agreement an express power of revocation.
(d) That said agreement of September 18, 1937, be reformed and modified by the insertion therein of an express power of revocation or in the alternative that said agreement be revoked and rendered null, void and of no effect, so that plaintiff should have the power, right and authority by Last Will and Testament or other instrument in writing to dispose of any property or estate which should come to him in his lifetime or after his decease, in same manner as though said agreement of September 18, 1937, had never been executed.
(e) That the Court determine and adjudge that said paper writing of September 18, 1937, is not an irrevocable trust.
(f) That the Court relieve plaintiff from the effect of said agreement of September 18, 1937, so that he may have the right to dispose *216 of his property unhampered by said agreement, by his Last Will and Testament duly executed pursuant to law.
(g) That the Court may construe said agreement of September 18, 1937, as an instrument which in the future should place in the possession of said Morristown Trust Company certain assets and securities of plaintiff for the purpose of investing the same and taking care of said investments but terminal (sic) at plaintiff's will.
(h) That the Court render declaratory judgment upon said agreement that the same does not create a trust or impair plaintiff in his right to dispose of such estate to which he may be possessed at the time of his death, by his Last Will and Testament duly executed, or in default of will in accordance with the intestate laws of the state in which plaintiff is a resident at the time of his decease.
The pretrial order in that action sets up the issues as follows:
a. Whether or not the indenture of September 18, 1937 is revocable.
b. If not, whether the same shall be reformed or rescinded as not being the clear intention of the parties when made.
c. If (a) and (b) are negative, a construction of the instrument.
The judgment, after a recital that the plaintiff Edward P. Thebaud, Jr. was not entitled to the relief demanded in the complaint, dismissed it.
The defendant Paul L. Thebaud contends also that his brother Edward is estopped from making his present claim because of the rights he has acquired under the similar indenture of trust between the third brother Louis B. Thebaud and Morristown Trust Company, referred to above.
As to the prior action, it would seem that in the light of the pleadings and judgment, the only matters adjudicated therein were that the instant trust indenture was irrevocable, that Edward was not entitled to reformation to the end that a revocation clause should be included therein nor the rescission of it because of the absence of an express revocation clause. The only prayer for construction in the complaint in that action was that the trust instrument should be construed to be "terminal [sic] at plaintiff's will," or in other words revocable. The precise question raised in this present action was not considered there, perhaps for the obvious reason that the corpus of the ancestral trusts was not then distributable. However, it would appear to *217 be assumed on the reading of the complaint in that action that Edward was of the opinion that the trust indenture would be operative during his lifetime. This, of course, is inconsistent with his present position that if he survived his mother nothing would pass to the trustee. However, as there is no identity of issues in the prior action and this, the claim of res adjudicata has no applicability here. Smith v. Fischer Baking Co., 105 N.J.L. 567 (E. & A. 1929). The pleadings and judgment in the prior action and not the opinion of the court are controlling. Robinson-Shore Development Co. v. Gallagher, 41 N.J. Super. 324 (Ch. Div. 1956), and cases there cited.
As to the matter of estoppel, it would appear that Louis B. Thebaud executed a similar indenture of trust on September 7, 1937, which was prior to the date of the instant one. It does not appear, however, that either of these was entered into in consideration of the other or in reliance thereon. A significant fact in this regard is that Paul who raises this question did not make any comparable disposition of his interest in the ancestral trusts. As a matter of fact his interest, as stated above, is presently payable to him outright. There is no merit to this contention.
On the main issue here the gist of Edward's argument is that under the instant trust indenture he transferred and assigned to the plaintiff only "all his right, title and interest in any funds which he shall receive pursuant to said agreement" (referring to the agreement of August 13, 1937); and that inasmuch as he survived his mother, nothing passed from the ancestral trusts to his order under the said agreement, and therefore plaintiff is entitled to nothing from the ancestral trusts by virtue of the instant trust; that the agreement of August 13, 1937 and the instant trust indenture are now entirely inoperative and ineffectual; and that one-third of the corpus is payable outright to him now under the terms of the ancestral trusts. He argues that he made no conveyance to the trustee of the interest in the ancestral trusts to which he would have been entitled upon his survival of his mother.
*218 Against this it is pointed out that the instant trust indenture provides that the net income, after deductions for a reserve fund, is payable to Edward for his life and upon his death to his widow for her life, or until her remarriage; and upon the death of the survivor of them or upon the remarriage of his widow the corpus of the trust is payable to the heirs at law of Edward P. Thebaud, father of the settlor; and the question is asked why are these provisions in the indenture if it related only to the property which came to his trustee after his death in the lifetime of his mother.
It is agreed on all sides that the instant indenture was inartistically drawn. Edward argues that the provisions for the payment of the income to him for life and for the payment of the corpus upon the death of the survivor of him and his wife should be disregarded as surplusage. To the contrary, it is urged that the true intention of Edward as settlor was to place in trust with the plaintiff one-third of the corpus of the ancestral trusts, whether it came to him directly under the terms of such trusts, or indirectly to his control through the agreement of August 13, 1937, in the event he predeceased his mother.
The fundamental aim in the construction of a trust instrument is to ascertain from the entire instrument the intent of the settlor, and if possible give effect to it. McCracken v. Gulick, 92 N.J. Eq. 214 (E. & A. 1920); Clark v. Commercial Trust Co., 119 N.J. Eq. 133 (Ch. 1935); Fidelity Union Trust Co. v. Heller, 18 N.J. Super. 49 (App. Div. 1952).
The confusion that has arisen here may possibly be due to the fact that in the agreement of August 13, 1937, the brothers made provision for the transfer and release of their interest in "such part of the funds constituting the above described trusts as would go to enlarge the shares of any of the undersigned in the event of the death of one or more of the others prior to the said Louisa J. Thebaud." The effect of this was that each released his right to his contingent interest in the vested remainder of each of his *219 brothers. At that time such contingent interest in each brother's vested remainder was one-sixth of the ancestral trusts, so that the release of two brothers to the other affected one-third of such trusts. Therefore, if we eliminate the emphasis on the idea of enlargement and consider the entire agreement of August 13, 1937, we find that the clear intent was to remove the possibility of divestiture and we are therefore obliged to conclude that the one outstanding thing it effected was to give each brother the power of disposition over one-third of the ancestral trusts whether or not he survived his mother.
In the background of the four ancestral trusts and in the light of the agreement of August 13, 1937, is it not clear from a study of the instant trust indenture and after giving full effect to all the language therein contained, that it was the dominant intent of Edward in that indenture to dispose of a one-third interest in the ancestral trusts whether it passed to his trustee upon his survival of his mother or whether it would have passed under the agreement of August 13, 1937 in the event of his predeceasing her without issue? The idea that the indenture dealt only with what Louis and Paul released in the agreement of August 13, 1937  namely the possibility of the enlargement of their interests in the ancestral trusts  is utterly lacking in reality. It is clear that despite what all counsel agree is inartistic draftsmanship that it was the obvious intent of Edward to have a one-third interest in the ancestral trusts pass to the plaintiff for the uses and purposes expressed in the instant trust indenture.
Judgment may be presented in accordance with the views expressed herein.