684 A.2d 1385

WILFREDO HERNANDEZ, PLAINTIFF–APPELLANT, v. REGION
NINE HOUSING CORP., NEW BRUNSWICK UAW ASSOCIATES,
AND JOAN WILK, DEFENDANTS–RESPONDENTS.

Argued October 7, 1996—Decided November 26, 1996.

646

*Jeffrey E. Fogel* argued the cause for appellant.

*Thomas J. Giblin* argued the cause for respondents Region Nine Housing Corp. and New Brunswick UAW Associates (*Giblin & Lynch*, attorneys).

*James A. Tarella*, Brunswick, argued the cause for respondent *Joan Wilk* (*Tarella & Liftman*, attorneys).

*Jennifer S. Goldstein*, a member of the California bar, argued the cause for amicus curiae The U.S. Equal Employment Opportunity Commission (*C. Gregory Stewart*, General Counsel, attorney; *Mr. Stewart* and *Ms. Goldstein*, on the brief).

Denise Reinhardt submitted a brief on behalf of amicus curiae New Jersey Employment Lawyers' Association (Reinhardt &

Schachter, attorneys; Ms. Reinhardt, Nancy M. Macirowski and Susan Kraham, on the brief).

The opinion of the Court was delivered by

HANDLER, J.

The issue raised in this appeal is whether an individual who under the Federal Civil Rights Act of 1964 received an adverse administrative determination from the United States Equal Employment Opportunity Commission on a claim of discrimination based on national origin is thereafter precluded from filing suit under the New Jersey Law Against Discrimination in the State Superior Court, Law Division, on a claim arising from the same facts.

I

Region Nine Housing Corporation/New Brunswick UAW Associates (Region Nine), hired plaintiff Wilfredo Hernandez, a United States citizen of Hispanic origin, as a maintenance worker in February 1991. On July 30, 1991, Region Nine, reportedly acting in response to tenant complaints, suspended Hernandez along with three other Hispanic workers for two days, with pay, for speaking Spanish in the lobby of the apartment building where they worked. In order to return to work, Hernandez was required to submit a letter praising the terms and condition of his employment. On reinstatement, Region Nine ordered Hernandez not to speak Spanish in public areas of the building during work hours. Subsequently, on October 28, 1991, Region Nine terminated Hernandez for unsatisfactory work performance.

On November 4, 1991, Hernandez filed a complaint with the New Jersey Division of Civil Rights (DCR) alleging that he was unlawfully suspended and terminated because of his national origin. On February 26, 1992, plaintiff filed a claim with the United States Equal Employment Opportunity Commission (EEOC) alleging his suspension and termination violated Title VII of the Federal Civil Rights Act of 1964. 42 *U.S.C.A.* §§ 2000e to

2000e–17 (Title VII). On June 4, 1992, before the DCR had taken any action on his complaint, Hernandez voluntarily withdrew his complaint from the DCR.

The EEOC investigated Hernandez's claim and issued a "determination" letter on May 19, 1993. The EEOC found that Region Nine's English-only policy was discriminatory and violative of Title VII because such a prohibition could not be justified as a business necessity. However, the EEOC failed to find reasonable cause to believe that Hernandez's termination was discriminatory; it found that Region Nine terminated Hernandez for poor work performance in accordance with Region Nine's warning/termination system. On January 21, 1994, the EEOC issued Hernandez a Notice of Right to Sue, which informed Hernandez that he had ninety (90) days from receipt of the notice to bring suit in federal district court; if he failed to sue within that time he would be barred from pursuing his Title VII claim in the district court.

On May 24, 1994, Hernandez filed suit in the Superior Court, Law Division against his employer, Region Nine, and its regional manager, Joan Wilk, alleging that his suspension and discharge violated New Jersey's Law Against Discrimination (LAD). *N.J.S.A.* 10:5–1 to –42. The Law Division granted Region Nine's motion for summary judgment concluding that plaintiff's claim was precluded by the adverse EEOC determination. The Appellate Division affirmed. 286 *N.J.Super.* 676, 670 *A.*2d 95 (1996). This Court granted plaintiff's petition for certification. 144 *N.J.* 377, 676 *A.*2d 1092 (1996).

## II

The LAD embodies this State's strong public policy to fight "discrimination against any of its inhabitants, because of race, creed, color, national origin, ancestry, age, sex, affectional or sexual orientation, marital status, familial status, liability for service in the Armed Forces of the United States, or nationality." *N.J.S.A.* 10:5–3. This Court has described the goal of the LAD as being "nothing less than the eradication 'of the cancer of discrimi-

nation.'" *Fuchilla v. Layman,* 109 *N.J.* 319, 334, 537 *A.*2d 652 (quoting *Jackson v. Concord Co.,* 54 *N.J.* 113, 124, 253 *A.*2d 793 (1969)), *cert. denied* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L. Ed.*2d 51 (1988). In order to further this goal and afford the greatest protection to the victims of discrimination, the Legislature has directed that the LAD be interpreted liberally. *Montells v. Haynes,* 133 *N.J.* 282, 298, 627 *A.*2d 654 (1993).

Title VII embraces a similar national policy to combat discrimination. 42 *U.S.C.A.* §§ 2000e to 2000e–17. Title VII, though, does not preempt state efforts at anti-discrimination legislation. 42 *U.S.C.A.* § 2000e–7. Title VII "was designed to supplement, rather than supplant, existing laws" outlawing discrimination in the workplace. *Alexander v. Gardner–Denver Co.,* 415 *U.S.* 36, 48–49, 94 *S.Ct.* 1011, 1019–20, 39 *L.Ed.*2d 147, 158 (1974). Congress specifically intended to permit "an individual to pursue independently his rights under both Title VII and other applicable state ... statutes." *Ibid.* State courts have jurisdiction to adjudicate Title VII claims. *Yellow Freight System, Inc. v. Donnelly,* 494 *U.S.* 820, 821, 110 *S.Ct.* 1566, 1567, 108 *L.Ed.*2d 834, 835 (1990).

There are, however, marked differences between the state and federal statutory schemes. The LAD provides a complainant with a choice of remedies in seeking redress for alleged discrimination. Persons may pursue their claims either administratively, by filing a verified complaint with the DCR, or judicially, by directly instituting suit in the Superior Court. *N.J.S.A.* 10:5–13. These remedy choices are "complementary," *Shaner v. Horizon Bancorp.,* 116 *N.J.* 433, 440, 561 *A.*2d 1130 (1989) (superseded by statute on other grounds as recognized by *Milazzo v. Exxon Corp.* 243 *N.J.Super.* 573, 580 *A.*2d 1107 (Law Div.1990)), but mutually exclusive. *Hermann v. Fairleigh Dickinson Univ.,* 183 *N.J.Super.* 500, 444 *A.*2d 614 (App.Div.), *certif. denied,* 91 *N.J.* 573, 453 *A.*2d 884 (1982).

■ The LAD provides the Director of the DCR with broad remedial authority to cure unlawful discrimination in cases brought before the Division. *Shaner, supra,* 116 *N.J.* at 438, 561 *A.*2d 1130; *Castellano v. Linden Bd. of Educ.,* 79 *N.J.* 407, 417, 400 *A.*2d 1182 (1979) (Handler, J., concurring in part and dissenting in part); *Sprague v. Glassboro State College,* 161 *N.J.Super.* 218, 226, 391 *A.*2d 558 (App.Div.1978); *see also Zahorian v. Russell Fitt Real Estate Agency,* 62 *N.J.* 399, 409, 301 *A.*2d 754 (1973) ("[S]tatute vests the Director with remedial powers which have been broadly expressed legislatively ... and have been broadly applied judicially.").

■ In addition to having the power to enjoin further discriminatory practices by an employer, *N.J.S.A.* 10:5–17, the Director can award incidental monetary relief in the form of compensatory damages, *Jackson v. Concord Co., supra,* 54 *N.J.* at 124–25, 253 *A.*2d 793, as well as damages for pain and suffering or personal humiliation. *Zahorian, supra,* 62 *N.J.* at 409, 301 *A.*2d 754. The Director also has the power to award attorney fees. *N.J.S.A.* 10:5–27.1. A determination by the DCR is a "final order" and is appealable to the Appellate Division. *N.J.S.A.* 10:5–21; *N.J.A.C.* 13:4–15.3.

■ The provision for an election of remedies conferring the right to bring a LAD claim directly in the Superior Court as an alternative to administrative relief was expressly authorized by a 1979 amendment to the LAD. *L.* 1979, *c.* 404; *N.J.S.A.* 10:5–13. A court's remedial power under the LAD is similar to that vested in the DCR. *Shaner, supra,* 116 *N.J.* at 440, 561 *A.*2d 1130. Judicial and administrative actions brought under the LAD are intended to be of similar purpose and effect. *Id.* at 441, 561 *A.*2d 1130. In addition, the court may award complete compensatory damages and punitive damages. *N.J.S.A.* 10:5–13.

■ Unlike the LAD, Title VII does not provide for an election between administrative and judicial remedies. Claimants under Title VII proceed on a single track. A complaining employ-

ee cannot institute suit directly in federal district court; rather, he or she must first file a charge of discrimination with the EEOC. 42 *U.S.C.A.* §§ 2000e–5(b), (c), (e); *Alexander, supra,* 415 *U.S.* at 47, 94 *S.Ct.* at 1019, 39 *L.Ed.*2d at 157. The complainant must then await either the outcome of the EEOC investigation, or the expiration of 180 days, before being given notice of the right to sue in federal district court. 42 *U.S.C.A.* §§ 2000e–5(b), (c), (e). On receipt of the notice of the right to sue, the plaintiff has ninety (90) days in which to file suit. 42 *U.S.C.A.* § 2000e–5(b). Title VII's exhaustion-of-administrative-remedies requirement is an essential component of the federal statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory work practices and enables the EEOC to perform its statutory role of obtaining voluntary compliance and promoting conciliatory efforts. *Patterson v. McLean Credit Union,* 491 *U.S.* 164, 180–81, 109 *S.Ct.* 2363, 2374–2375, 105 *L.Ed.*2d 132, 153 (1989).

The Code of Federal Regulations enumerates the powers vested in the EEOC to investigate claims of discrimination. *C.F.R.* §§ 1601.15–.17. The EEOC may investigate the complainant's charges and require the complainant to submit a statement detailing the practices alleged to be unlawful and the harm he or she has suffered. *C.F.R.* § 1601.15. The EEOC may also convene a fact-finding conference with the parties in order to define the issues and ascertain whether there exists a basis for a negotiated settlement of the charge. *Ibid.* The EEOC is also empowered to issue subpoenas and call witnesses. *C.F.R.* §§ 1601.16–.17. Complainants have no right to a formal hearing and the EEOC has no power to fashion remedies or enforce its determinations.

█ A complainant has the right to sue regardless of whether or not the EEOC finds reasonable cause to support his or her allegations of discrimination. *See C.F.R.* § 1601.19 (providing that the EEOC shall inform complainant who received a "no cause determination" of his or her right to sue in district court); *C.F.R.* § 1601.28(b) (providing that the EEOC shall issue notice of right to sue to complainant who received a "reasonable cause" determi-

nation). The consequences of a "reasonable cause" determination by the EEOC are that the agency may then try to obtain voluntary compliance by the offending employer, to effect a conciliation between the parties, or to institute suit itself against the employer. 42 *U.S.C.A.* §§ 2000e–5(b), (f). Although the EEOC may, on its own initiative, reconsider its determinations, *C.F.R.* §§ 1601.19, .21, parties have no right to appeal an EEOC determination. *See Georator Corp. v. E.E.O.C.*, 592 *F.*2d 765 (4th Cir. 1979). The complainant retains the right to a *de novo* trial in the district court on the merits of his or her Title VII claim regardless of whether or not the EEOC concludes that "reasonable cause" exists to support the allegations of employment discrimination. *See Alexander, supra,* 415 *U.S.* at 48 n. 8, 94 *S.Ct.* at 1019 n. 8, 39 *L. Ed.*2d at 158 n. 8 (noting that "an individual's cause of action is not barred by a Commission finding of no reasonable cause to believe that the Act has been violated"); *McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792, 799, 93 *S.Ct.* 1817, 1822, 36 *L.Ed.*2d 668, 676 (1973) (holding that an EEOC finding of no-probable-cause does not restrict an individual's right to a *de novo* trial on the merits particularly "in view of the large volume of complaints before the Commission and the nonadversarial character of many of its proceedings").

EEOC determinations are generally admissible at subsequent trials, absent a showing that a specific finding is particularly untrustworthy. *Abrams v. Lightolier, Inc.,* 841 *F.Supp.* 584, 592 (D.N.J.1994), *aff'd,* 50 *F.*3d 1204 (3d Cir.1995). District courts, though, retain the discretion to exclude EEOC determinations if the courts conclude that the probative value of the agency reports are substantially outweighed by the danger of unfair prejudice. *Fed.R.Evid.* 403; *Walton v. Eaton Corp.,* 563 *F.*2d 66, 75 (3d Cir.1977); *accord Cortes v. Maxus Exploration Co.,* 977 *F.*2d 195 (5th Cir.1992). When admitted at trial, an EEOC determination carries no precedential value. *See Gilchrist v. Jim Slemons Imports, Inc.,* 803 *F.*2d 1488, 1500 (9th Cir.1986) ("A finding of probable cause does not suggest to the jury that the

EEOC has already determined that there has been a violation. Rather it suggests that preliminarily there is reason to believe that a violation has taken place."); *E.E.O.C. v. Chesapeake & Ohio Ry. Co.*, 577 *F*.2d 229, 232 (4th Cir.1978) ("The reasonable cause determination is not designed to adjudicate an employer's alleged violations of the Act but to notify an employer of the commission's finding and to provide common ground for conciliation.").

As earlier stated, the LAD requires a complainant to make an election of remedies between either the DCR or the Superior Court. *N.J.S.A.* 10:5–13. A "final determination" in either the DCR or the Superior Court precludes the complainant from bringing "any other action, civil or criminal, based on the same grievance." *N.J.S.A.* 10:5–27; *Christian Bros. Inst. v. Northern New Jersey Interscholastic League*, 86 *N.J.* 409, 415, 432 *A*.2d 26 (1981); *Aldrich v. Manpower Temp. Services*, 277 *N.J.Super.* 500, 505, 650 *A*.2d 4 (1994); *Giammario v. Trenton Bd. of Educ.*, 203 *N.J.Super.* 356, 497 *A*.2d 199 (App.Div.), *certif. denied*, 102 *N.J.* 336, 508 *A*.2d 212 (1985), *cert. denied*, 475 *U.S.* 1141, 106 *S.Ct.* 1791, 90 *L.Ed.*2d 337 (1986); *Hermann, supra*, 183 *N.J.Super.* at 504, 444 *A*.2d 614. A plaintiff is permitted to switch forums only before a final determination has been rendered. *Aldrich, supra*, 277 *N.J.Super.* at 505, 650 *A*.2d 4.

## III

The Appellate Division viewed plaintiff's LAD suit as an attempt "to switch forums after an adverse administrative ruling." 286 *N.J.Super.* at 682, 670 *A*.2d 95. It held that plaintiff "should be precluded under our State law from bringing his LAD claim in state court after an adverse administrative determination by the EEOC." *Id.* at 681, 670 *A*.2d 95.

The preclusive language of *N.J.S.A.* 10:5–27, cited by the Appellate Division, does not demand the result the court reached. As earlier explained, the consequences of determinations from the respective federal and state agencies are radically different. DCR determinations are explicitly given final, preclusive, and enforce-

able effect by state law. EEOC determinations, on the other hand, are explicitly rendered non-final and non-binding by federal statute. An adverse EEOC determination does not bar a complainant from pursuing a Title VII action in either federal or state court. Rather, an EEOC determination is a prerequisite to the filing of a Title VII action.

The Appellate Division treated as controlling the holding ·of *Hermann, supra,* 183 *N.J.Super.* 500, 444 *A.*2d 614. The plaintiff in *Hermann* pursued a LAD claim before the DCR, which found that her complaint was without merit and issued a final determination of "No Probable Cause." *Id.* at 503, 444 *A.*2d 614. The plaintiff then filed an identical claim in the Law Division, which dismissed her suit. The Appellate Division affirmed, concluding that under *N.J.S.A.* 10:5–27, a final DCR determination precludes a subsequent Law Division suit based on the same set of facts. *Id.* at 503–05, 444 *A.*2d 614. Here, however, there exists no DCR determination on the merits. The preclusive language of *N.J.S.A.* 10:5–27 does not apply.

Parallel analysis of *Pittman v. LaFontaine,* 756 *F.Supp.* 834 (D.N.J.1991), also relied on by the Appellate Division, does not support its conclusion. In *Pittman,* a plaintiff's federal Title VII claim was barred on the basis of a prior, adverse administrative determination by the DCR. The district court conducted a Full–Faith–and–Credit analysis to discern the impact of the DCR decision on plaintiff's case. Finding that the DCR proceeding satisfied due process, and the DCR's determination was preclusive under state law, the district court concluded that the adverse determination was entitled to Full Faith and Credit and accordingly dismissed the plaintiff's suit. *Id.* at 840–46.

*Aldrich v. Manpower Temp. Services, supra,* 277 *N.J.Super.* at 500, 650 *A.*2d 4, also does not support the Appellate Division's decision here. The plaintiff in *Aldrich* was allowed to sue in the Law Division after withdrawing her complaint from the DCR before a determination had been entered. *Id.* at 506, 650 *A.*2d 4. The *Aldrich* court rejected defendant's argument that plaintiff's

initial choice of an administrative forum should bar her from suing in the Law Division under *N.J.S.A.* 10:5–27. *Id.* at 505, 650 *A.*2d 4. The court held that "[i]t is the finality in the forum selected that raises the bar," not the initial selection of a forum. *Ibid.* Because no final determination had been entered by the DCR, Aldrich was free to abandon her DCR claim and file in the Law Division. *Id.* at 506, 650 *A.*2d 4.

The Appellate Division distinguishes Hernandez's case from *Aldrich* on the basis that Hernandez received an adverse agency determination whereas Aldrich withdrew from the DCR before a determination was issued. 286 *N.J.Super.* at 683, 670 *A.*2d 95. That distinction is not material. The Appellate Division believed that an EEOC determination is a "final" order. *Ibid.* However, plaintiff was never subject to a final determination on his federal claim, *see Francis–Sobel v. University of Maine,* 597 *F.*2d 15, 18 (1st Cir.) (characterizing EEOC determination as "nonbinding and nonfinal"), *cert. denied,* 444 *U.S.* 949, 100 *S.Ct.* 421, 62 *L.Ed.*2d 319 (1979). Under federal law plaintiff was free to file suit in federal district court.

In summary, Title VII does not provide an "election" of remedies. Hernandez had to go through the EEOC before he could litigate his Title VII claim; he did not elect or choose to settle his grievance through an exclusive administrative procedure. Further, federal law is explicit that Title VII is a complement to state anti-discrimination statutes and instituting a Title VII action cannot act as a bar to bringing a LAD claim. *See* 42 *U.S.C.A.* § 2000e–7. Plaintiffs regularly join LAD and Title VII claims in federal employment discrimination cases. *See, e.g., Pollock v. American Telephone & Telegraph Long Lines,* 794 *F.*2d 860 (3d Cir.1986); *Martinez v. NBC,* 877 *F.Supp.* 219 (D.N.J.1994); *Domm v. Jersey Printing Co.,* 871 *F.Supp.* 732 (D.N.J.1994). Thus, *N.J.S.A.* 10:5–27 does not bar this action.

█ The EEOC determination, although not final and enforceable, nevertheless does have legal significance. *Supra* at 655–656, 684 *A.*2d 1390–1391. That such a determination may be admitted

in a subsequent district court litigation suggests that the doctrine of collateral estoppel or issue preclusion may be implicated in determining whether the adverse EEOC determination forecloses the adjudication of any subsequent LAD claims. *See Ensslin v. Township of North Bergen,* 275 *N.J.Super.* 352, 369, 646 *A.*2d 452 (App.Div.1994) (holding doctrine of collateral estoppel precluded terminated police officer from filing a LAD suit in the Law Division after he had received an adverse administrative decision from the Merit System Board, which was upheld by an administrative law judge), *certif. denied,* 142 *N.J.* 446, 663 *A.*2d 1354 (1995); *see also Parklane Hosiery Co. v. Shore,* 439 *U.S.* 322, 326 n. 5, 99 *S.Ct.* 645, 649 n. 5, 58 *L.Ed.*2d 552, 559 n. 5 (1979) ("Under the doctrine of collateral estoppel, . . . the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."). This issue was not addressed by the Appellate Division.

 New Jersey courts follow the doctrine of collateral estoppel or the rule of issue preclusion described in the Restatement of Judgments. *See Zoneraich v. Overlook Hosp.,* 212 *N.J.Super.* 83, 94, 514 *A.*2d 53 (App.Div.), *certif. denied,* 107 *N.J.* 32, 526 *A.*2d 126 (1986); *Colucci v. Thomas Nicol Asphalt Co.,* 194 *N.J.Super.* 510, 515, 477 *A.*2d 403 (App.Div.1984); *Jalil v. Avdel Corp.,* 873 *F.*2d 701, 704 (3d Cir.1989), *cert. denied,* 493 *U.S.* 1023, 110 *S.Ct.* 725, 107 *L.Ed.*2d 745 (1990). The Restatement provides:

> When an issue of fact or law is actually litigated and determined by a valid and *final judgment,* the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.
>
> [*Restatement (Second) of Judgments* § 27 at 250 (1982) (emphasis added).]

New Jersey law also requires that the issue presented in the later action must be identical to the issue decided in the earlier adjudication. *Morristown Trust Co. v. Thebaud,* 43 *N.J.Super.* 209, 217, 128 *A.*2d 288 (Ch.Div.1957). The Restatement adds, however, that issue preclusion cannot be invoked when:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

\* \* \* \* \* \* \* \*

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

\* \* \* \* \* \* \* \*

(5) There is a clear and convincing need for a new determination of the issue ... because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, . . . .
[*Restatement (Second) of Judgments, supra,* § 28 at 273.]

██ The determinations made by administrative agencies are entitled to preclusive effect "if rendered in proceedings which merit such deference." *Ensslin, supra,* 275 *N.J.Super.* at 369, 646 *A.*2d 452; *accord City of Hackensack v. Winner,* 82 *N.J.* 1, 31–33, 410 *A.*2d 1146 (1980).

It is clear that the EEOC determination cannot preclude any issue raised by plaintiff's LAD claims in the Superior Court. First, EEOC determinations cannot be considered "final" judgments. *See Restatement (Second) of Judgments, supra,* at § 27; *see also Ward v. E.E.O.C.,* 719 *F.*2d 311, 313 (9th Cir.1983) (holding EEOC determination is not a "final agency action" under the APA because it "has no determinate consequences" and is "merely preparatory to a lawsuit"), *cert. denied,* 466 *U.S.* 953, 104 *S.Ct.* 2159, 80 *L.Ed.*2d 544 (1984); *Georator Corp., supra,* 592 *F.*2d at 768 ("No such finality exists with respect to the EEOC's determination of reasonable cause. Standing alone, it is lifeless, and can fix no obligation nor impose any liability on the plaintiff."). Second, Hernandez could not have obtained review of the EEOC determination. *See Restatement (Second) of Judgments, supra,* at § 28(1). As earlier discussed, there is no avenue of appeal from an EEOC determination; a subsequent district court suit on the Title VII claim will be *de novo* and on the merits. *Supra* at 654–655, 684 *A.*2d 1389–1390. Third, collateral estoppel is not appropriate because there exist significant differences in the quality and extensiveness of the proceedings followed in the EEOC as com-

pared to proceedings in the Law Division. *See Restatement (Second) of Judgments, supra,* at § 28(3). As already described, proceedings before the EEOC are less formal than in a civil court. *Supra* at 654–655, 684 *A.2d* 1389–1390. In conclusion, an adverse EEOC determination should not collaterally estop a plaintiff from being able to litigate the issue of employment discrimination under the LAD in the Law Division.

The Appellate Division also observed that the entire-controversy doctrine, which "encourages prompt, efficient disposition of claims in one proceeding and in one forum," serves to bar Hernandez's Law Division suit. 286 *N.J.Super.* at 684, 670 *A.2d* 95. However, in *Perry v. Tuzzio,* 288 *N.J.Super.* 223, 672 *A.2d* 213 (1996), the Appellate Division recently explained that "application of the [entire-controversy] doctrine requires equality of forum, that is, the first forum must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same remedial opportunities as the second forum." *Id.* at 230, 672 *A.2d* 213. As discussed earlier, the informal and flexible nature of the EEOC administrative forum does not afford a complainant the ability to litigate a claim to the same extent that he or she would be able in the Superior Court. Further, the EEOC cannot render a final, enforceable judgment. The entire-controversy doctrine does not bar Hernandez's LAD claim on the basis that he did not raise it before the EEOC.

## IV

The judgment of the Appellate Division is reversed.

For reversal—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.