712 A.2d 1177 (1998)
313 N.J. Super. 249
Edward O'LONE, Plaintiff/Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, State of New Jersey, William H. Fauver, and Richard A. Seidl, Defendants/Respondents.
Superior Court of New Jersey, Appellate Division.
Argued April 21, 1998.
Decided June 22, 1998.
Mario A. Iavicoli, Haddonfield, for plaintiff/appellant.
Edward J. Dauber, Newark, for defendants/respondents (Greenberg Dauber & Epstein, attorneys; Mr. Dauber and Sumeeta A. Gawande, on the brief).
Before Judges PRESSLER[1], CONLEY and WALLACE.
The opinion of the court was delivered by *1178 WALLACE, Jr., J.A.D.
Plaintiff Edward O'Lone appeals from the trial court's grant of summary judgment in favor of defendants, the New Jersey Department of Corrections (DOC), the State of New Jersey (State), DOC Commissioner William H. Fauver, and DOC Deputy Commissioner Richard A. Seidl, dismissing his wrongful discharge complaint.
On appeal, plaintiff urges that it was error to dismiss his claims under the Law Against Discrimination (LAD) against all defendants and his claim for violating public policy against the individual defendants. We hold it was error to dismiss the LAD count and affirm the dismissal of the claim for violating public policy.

I
Plaintiff began his employment with the DOC in 1973. Within six years he became the Superintendent of Leesburg State Prison. In December 1984, plaintiff was terminated.
Plaintiff commenced the instant action on November 24, 1990, alleging that the DOC wrongfully discharged him from his position as Superintendent in violation of public policy (Count One); wrongfully discharged him because of his relationship with an African-American woman in violation of LAD (Count Two); and similarly, alleged a violation of 42 U.S.C.A. § 1981, et seq. (Count Three).
Defendants moved for summary judgment on entire controversy and statute of limitations grounds. On November 4, 1994, the trial court granted summary judgment only as to Count Three, in favor of the State and the DOC, but not the individual defendants, and denied defendants' motion for summary judgment based upon the entire controversy doctrine and the statute of limitations for Counts One and Two. The trial court held that since Montells v. Haynes, 133 N.J. 282, 298, 627 A.2d 654 (1993), LAD causes of action arising before June 27, 1993, have a six year statute of limitations, and thus, plaintiff's LAD claim was not time-barred. The court also ordered the parties to provide supplemental material addressing "whether a cause of action exists for discrimination under Count Two (LAD) and Count Three (Section 1983) based upon the personal relationship between Plaintiff and an African-American woman."
On May 17, 1995, after receiving the supplemental briefs, the court granted summary judgment dismissing Count Two in its entirety and dismissing Count Three against the remaining defendants. The court further ordered the parties to confer and advise the court regarding any remaining claims. On August 17, 1995, defendants moved for summary judgment dismissing Count One. On January 16, 1997, the trial court granted summary judgment dismissing Count One, the public policy claim, and dismissed plaintiff's complaint in its entirety. This appeal followed.

II
At oral argument before us, counsel for plaintiff indicated that he did not contest the dismissal of Count III, the alleged violation of § 1983 of the Civil Rights Act, or the dismissal of the public policy claim against the State in Count I. However, counsel claims it was error to dismiss the public policy claim against the individual defendants and to dismiss the LAD claim against all defendants.
We turn first to plaintiff's contention that there were genuine issues of material fact which precluded the granting of summary judgment and urging that he proved a prima facie case of discriminatory discharge in violation of the LAD.
Our Supreme Court has recently refined the standard that a motion judge should apply in deciding a motion for summary judgment:
[A] determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. The "judge's function is not himself [or herself] to weigh the evidence *1179 and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, supra, 477 U.S. at 249, 106 S.Ct. at 2511, 91 L. Ed.2d at 212. Credibility determinations will continue to be made by a jury and not the judge. If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of Rule 4:46-2. Liberty Lobby, supra, 477 U.S. at 250, 106 S.Ct. at 2511, 91 L. Ed.2d at 213. The import of our holding is that when the evidence "is so one-sided that one party must prevail as a matter of law," Liberty Lobby, supra, 477 U.S. at 252, 106 S.Ct. at 2512, 91 L. Ed.2d at 214, the trial court should not hesitate to grant summary judgment.

[Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995).]
The LAD provides in pertinent part:
It shall be an unlawful practice, or as the case may be, an unlawful discrimination: a. For an employer, because of the race, creed, color, national origin, ancestry, age,... [or] sex ... of any individual ... to refuse to hire or employ or to bar or to discharge ..., unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment...

[N.J.S.A. 10:5-12(a).]
The Legislature has directed "that this act shall be liberally construed in combination with other protections available under the laws of this State." N.J.S.A. 10:5-3; See Montells v. Haynes, 133 N.J. 282, 298, 627 A.2d 654 (1993). Our Supreme Court has consistently noted the remedial objectives of the LAD and has "described the goal of the LAD as being nothing less than the eradication `of the cancer of discrimination.'" Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 651-52, 684 A.2d 1385 (1996)(quoting Fuchilla v. Layman, 109 N.J. 319, 334, 537 A.2d 652, cert. denied, 488 U.S. 826, 109 S.Ct. 75, 102 L. Ed.2d 51 (1988)). Further, the "LAD embodies this State's strong public policy to fight discrimination against any of its inhabitants, because of race, creed, color, national origin, ancestry, age, sex, affectional or sexual orientation, marital status, familial status, liability for service in the Armed Forces of the United States, or nationality..." Hernandez, supra, 146 N.J. at 651, 684 A.2d 1385 (citing N.J.S.A. 10:5-3.) Recently, the Court recognized that a single, severe incident of harassment may be sufficient to warrant a remedy under the LAD. Taylor v. Metzger, 152 N.J. 490, 706 A.2d 685 (1998)(holding that a factfinder could conclude that defendant engaged in discriminatory harassment by uttering a racial epithet that was sufficiently severe to have created a hostile work environment).
The specific test with regard to making a prima facie case of discriminatory discharge requires the employee to prove: "`(1) that he was in the protected group, (2) that he was performing his job at a level that met his employer's legitimate expectations (3) that he nevertheless was fired, and (4) that the [employer] sought someone to perform the same work after he left.'" See Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 382, 541 A.2d 682 (1988)(quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 597, 538 A.2d 794 (1988)); Greenberg v. Camden County Vocational & Technical Schs., 310 N.J.Super. 189, 708 A.2d 460 (App. Div.1998). Once the employee has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. Jansen, supra, 110 N.J. at 380-81, 541 A.2d 682. If the employer articulates a legitimate reason for the employment decision, the burden then shifts back to the employer to show that the employer's asserted nondiscriminatory reason "`was not the true reason for the employment decision but was merely a pretext for discrimination.'" Id. at 381, 541 A.2d 682 (quoting Clowes, supra, 109 N.J. at 596, 538 A.2d 794).
In the present case, plaintiff is white and is not a member of a protected group. Generally, when the employee is not a minority, courts have modified the first factor of the prima facie case to require the plaintiff *1180 to show that he has been victimized by an "unusual employer who discriminates against the majority." Erickson v. Marsh & McLennan Co. Inc., 117 N.J. 539, 551, 569 A.2d 793 (1990). Plaintiff urges that he should be treated as if he were in a protected group because he was allegedly terminated for his refusal to stop dating an African-American woman, who is a member of a protected group. We agree.
Here, plaintiff testified at deposition that he was told by Joseph Cannon that he should stop dating his African-American friend or else there would be consequences. Plaintiff continued to date his friend and was terminated as Superintendent of the prison. Regardless of the race of this plaintiff, he suffered the same injury as a minority when he was discharged for allegedly associating with a member of a protected group. Plaintiff has shown "that the prohibited consideration [race] played a role in the decisionmaking process and that it had a determinative influence" on his termination. Miller v. CIGNA Corp., 47 F.3d 586, 597 (3d Cir.1995).
Therefore, to achieve substantial justice, we conclude that where the plaintiff is wrongfully discharged for associating with a member of a protected group, that is the functional equivalent of being a member of the protected group. See generally Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 625, 660 A.2d 505 (1995)(coworkers of an employee who has asserted rights under the LAD have standing to litigate a claim that they suffered retaliation because of the acts of the co-employee rather than their own supportive conduct). Thus, we conclude that under the circumstances here, plaintiff has met the first prong of a prima facie case.
On this record there is no question that plaintiff established the second, third, and fourth prongs of a prima facie case in that he was performing his job at a level that met his employer's legitimate expectations; that he was nevertheless, fired; and that another person was hired to perform the same work. Thus, when the record is viewed in the light most favorable to plaintiff, we are convinced that he established a prima facie case under the LAD.
The burden then shifted to defendants to articulate a nondiscriminatory reason for the discharge. Defendants proffered no such reason, but instead moved for summary judgment on this limited record. Consequently, it was error to dismiss Count Two of plaintiff's complaint against all defendants.

III
Plaintiff also argues that his termination was in violation of a clear mandate of public policy as a result of his urging that his employers not commit illegal conduct and therefore, under Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 417 A.2d 505 (1980), his cause of action against the individual defendants should not have been dismissed. Specifically, plaintiff alleges that prior to his discharge an illegal practice was occurring at Trenton State Prison whereby "when prisoners from other institutions were sent to Trenton State Prison, they were, on occasion, beaten up by Corrections Officers as a warning that they should stay in line."
The trial court dismissed plaintiff's public policy claim against the State and the DOC for failure to file the claim against these public entities within the mandatory two year statute of limitations and the notice requirements of the Tort Claims Act, N.J.S.A. 59:8-3, et seq. Plaintiff does not appeal this decision, and as a result, we do not address that issue. Nevertheless, plaintiff contends that he should be permitted to maintain his Pierce cause of action against the individual defendants.
We find no merit to plaintiff's contentions that the individual defendants should be personally liable. R. 2:11-3(e)(1)(E). While we need not and do not address the issue whether a public employee may maintain a Pierce cause of action, even if he could, that action would be against the public entity and not the individual defendants. Because this count in the complaint was dismissed as to the State and DOC, it was appropriate to dismiss it against the individual defendants. We affirm the dismissal of the Pierce cause of action against the individual defendants.
*1181 We vacate the dismissal of plaintiff's LAD claim, and the matter is remanded to the Law Division for further proceedings.
NOTES
[1] Judge Pressler did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.